JS-6

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 804 | **DATE** | 3/21/2001 |
| **CASE TITLE** | SCHMIDT vs. R. LAVIN AND SONS INC. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]    Pursuant to Memorandum Opinion and Order entered this day, defendant's motion for summary judgment is granted. All other pending motions are moot. This action is dismissed in its entirety.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | number of notices | **Document Number** |
| | No notices required. | | | | |
| ✓ | Notices mailed by judge's staff. | | | MAR 2 2 2001 | |
| | Notified counsel by telephone. | | | date docketed | 17 |
| | Docketing to mail notices. | | | C.S. | |
| | Mail AO 450 form. | | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | 3/21/2001 | |
| | | | | date mailed notice | |
| | JS | courtroom deputy's initials | | JS | |
| | | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**

MAR 2 2 2001

DONALD G. SCHMIDT )
)
Plaintiff, )
)
v. )
)
R. LAVIN AND SONS, INC., )  No. 00 C 0804
)
Defendant. )

## MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

Plaintiff Donald G. Schmidt ("Schmidt") filed a single count complaint under the Age

Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §621 *et seq*. ("ADEA") against

defendant R. Lavin and Sons, Inc. ("R. Lavin") seeking damages, attorneys' fees and costs. On

February 9, 2001, R. Lavin filed this motion for summary judgment pursuant to Federal Rule of

Civil Procedure 56. Having considered the matter fully, for the reasons stated herein, R. Lavin's

motion for summary judgment is GRANTED.

R. Lavin is a corporation organized and existing pursuant to the laws of the State of Illinois. Since its inception in 1900, R. Lavin has been a family-owned business. R. Lavin operates in the foundry industry and is in the business of buying nonferrous scrap metal, mixing the metal to specifications for each customer, melting down the metal, pouring the metal into ingots and then selling the ingots. As a family-owned business, R. Lavin has always maintained an informal business environment. R. Lavin traditionally did not keep detailed records or personnel files on its non-union employees and did not give performance evaluations or reviews to its non-union employees.

In 1970, R. Lavin hired Schmidt as a Field Metallurgist. As a Field Metallurgist, Schmidt worked with the sales force and plant personnel of R. Lavin and was responsible for providing answers to the metallurgical questions and concerns of R. Lavin customers. As a Field Metallurgist, Schmidt assisted customers to better operate their foundries, by offering troubleshooting advice and by otherwise being of service to the customers. In general, keeping customers happy was an important part of Schmidt's responsibilities as a Field Metallurgist. In 1995, R. Lavin hired Brian Callaghan ("Callaghan") as a Field Metallurgist. Schmidt and Callaghan performed the same job responsibilities and neither Schmidt nor Callaghan were assigned to specific customer accounts. Instead R. Lavin sent either metallurgist wherever they were needed among R. Lavin's customer base.

In the latter half of the 1990's, R. Lavin began experiencing operating losses because of a

---

[1]The following facts are undisputed and are taken from the defendant's and plaintiff's Local Rule 56.1(a) & (b) statements of material facts and accompanying exhibits.

downturn in the metals industry. From 1996 through 1999, R. Lavin suffered operating losses each year totaling over $6 million. During that time, R. Lavin attempted to return to profitability by reducing its overall operating expenses. In 1997, R. Lavin hired a consulting firm to them help find ways to cut operating expenses. The consulting firm advised R. Lavin to reduce its production of metals, cut salaries, and layoff employees by way of a reduction-in-force ("RIF"). Following that advice, R. Lavin cut the salaries of a number of employees including Schmidt and Callaghan. Additionally, R. Lavin began the process of terminating employees and not replacing employees who left the company voluntarily.

In January, 1999, Jonathan Lavin ("J. Lavin"), then President of R. Lavin, decided to reduce the number of Field Metallurgists from two to one. Since the downturn in the metal industry, R. Lavin's customer base had shrunk considerably. Based on this situation, J. Lavin believed that it was unnecessary to have two Field Metallurgists employed where one Metallurgist could cover R. Lavin's entire customer base. Additionally, the elimination of one of the two Metallurgist positions was consistent with lowering R. Lavin's overall operating expenses since the Field Metallurgist position was not an income-producing position, meaning that Field Metallurgists did not sell any products and the Metallurgists' services were provided at no additional charge to the customer. At the time the decision was made to eliminate one of the two Metallurgist positions, the two positions were held by Schmidt, age 75 and Callaghan, age 51.

Once it was determined that one of the Field Metallurgist positions would be eliminated, J. Lavin decided to retain Callaghan and to terminate Schmidt. J. Lavin made his decision to retain Callaghan and to terminate Schmidt based on several customer complaints made against Schmidt and based on employee comments made to J. Lavin concerning Schmidt's ability to function as part

of a team. In making his decision to terminate Schmidt, J. Lavin did not consider Schmidt's job performance to be necessarily unsatisfactory and absent financial difficulties both Field Metallurgists would have been retained. In light of R. Lavin's financial difficulties, however, R. Lavin was forced to reduce its workforce, and R. Lavin's remaining workforce would in turn be forced to work more as a cohesive unit in order to efficiently absorb the responsibilities of employees terminated and not replaced. Based on these parameters, Schmidt was terminated because J. Lavin believed that Callaghan was a better fit in comparison to Schmidt within R. Lavin's workforce going forward.

J. Lavin was personally aware of customer complaints made against Schmidt. J. Lavin received some of these complaints directly from customers, and other complaints came through the sales people of R. Lavin. Bob Orringer, Vice President of United Bronze of Pittsburgh, started complaining about Schmidt in the early 1990's. Orringer complained directly to J. Lavin and complained to R. Lavin sales person Robert Goldstein. In an affidavit, Orringer stated that Schmidt was not helpful to his company, that Schmidt gave vague advice when asked about specific problems, and that Schmidt gave long-winded answers when asked succinct questions. Orringer finally requested the Schmidt never be sent to his facility again. Another customer, Catherine Dolan, owner and President of Calumet Brass, told Robert Goldstein in 1995 that she too did not want to deal with Schmidt any more. In her affidavit, Dolan stated that in her dealings with Schmidt she found him to be arrogant and uncomfortable in conversation. Don Doss, president and owner of Metal Dynamics, also told J. Lavin that he did not want Schmidt sent to his facility for reasons similar to those expressed by Dolan and Orringer. Doss stated in an affidavit that he thought that Schmidt focused too much on the theoretical aspects of metallurgy and not enough on its practical applications. In addition, between 1995 and 1997, J. Lavin was made aware by his salesmen Robert

4

Goldstein and Tom Long that Dean Borens of Melron Corporation and customers Algonac Cast Products, Superior Brass, and Grand Haven Brass all requested that Schmidt not be sent to their facilities. In comparison, J. Lavin was not aware of any customer complaints made against Callaghan.

In the past, these complaints and requests made against Schmidt were not a problem because there were two metallurgists available. Where Schmidt had difficulty with a particular customer, Callaghan would service that customer instead. Based on R. Lavin's new direction going forward, however, one Metallurgist would now be responsible for R. Lavin's entire customer base. Accordingly, Callaghan was retained instead of Schmidt because in comparison to Schmidt Callaghan was the only one of the two Metallurgists universally accepted by all of R. Lavin's customers.

Not only was J. Lavin made aware of various customer complaints against Schmidt, but J. Lavin had also been made aware of several complaints and unfavorable comments concerning Schmidt's interactions with fellow R. Lavin employees. Among R. Lavin employees, Callaghan was viewed as more of a team player and J. Lavin based his decision to retain Callaghan because J. Lavin believed that Callaghan was better able to function as a part of a team.

Tom Long told J. Lavin that on numerous occasions he had difficulty dealing with Schmidt. Long explained that Schmidt at times was very long-winded and that Schmidt seemed to have difficulty explaining technical issues in layman terms. Robert Goldstein told J. Lavin that Schmidt often times stepped outside of his role of a metallurgist and discussed pricing with customers, an area expressly reserved for sales people. Goldstein also complained that Schmidt was often long winded in discussions with customers. In all Leonard Bloomfield, Everett Biegalski, Stuart

Rosenthal, Phillip Varnagis, David Lennon, George Lennon, Jim Shiltz, and Arnold Kerstein all then current employees or officers of R. Lavin all stated to J. Lavin that they had difficulty working with Schmidt. Additionally, J. Lavin asked directly several then current employees and officers of R. Lavin whom he should retain between Schmidt and Callaghan. In response not one employee or officer consulted expressed a preference in retaining Schmidt over Callaghan.

J. Lavin made the decision to terminate Schmidt in April, 1999. Schmidt, however, was not terminated until June, 1999 because J. Lavin found it difficult to terminate any R. Lavin employee. In June, 1999, J. Lavin called Schmidt in the morning and asked Schmidt to meet for lunch. J. Lavin and Schmidt met for lunch, and during that lunch J. Lavin told Schmidt that he was being terminated and that he would be compensated through the month of July, 1999. In 1999, R. Lavin terminated three non-union employees, Schmidt was fired in June and Tom Zybszynski and Ted Paxton were fired in October. In 2000, R. Lavin terminated 18 employees. This suit was initiated on February 9, 2000.

## STANDARD OF REVIEW

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in the nonmovant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513 (1996). This court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.

6

A party who bears the burden of proof on a particular issue, however, may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553 (1986). There is no issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249, 106 S. Ct. at 2511.

## ANALYSIS

Schmidt has not offered any direct evidence of discrimination by R. Lavin. Therefore, Schmidt must proceed under the familiar indirect method of proof outlined in McDonnell Douglas. See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817 (1973). Accordingly, in order to establish a prima facie case of discrimination under the ADEA, Schmidt must first establish that he was in the protected age group, and performing to R. Lavin's legitimate expectations then Schmidt must show that despite his performance he was discharged by R. Lavin, and that substantially younger employees who were similarly situated to him were treated more favorably by R. Lavin. See Janiuk v. TCG/Trump Co., 157 F.3d 504, 507 (7th Cir. 1999). Once Schmidt satisfies this initial burden, R. Lavin must come forward with a legitimate, nondiscriminatory reason for Schmidt's discharge. Id. Once R. Lavin satisfies its burden then Schmidt bears the ultimate burden of showing that R. Lavin's proffered reason is a pretext for age discrimination. Id.

In this case, however, there is no need to reach the later inquiries of the McDonnell Douglas analysis because Schmidt has failed to produce sufficient evidence in the record to raise a genuine issue of material fact that substantially younger employees similarly situated to him were treated more favorably by R. Lavin. Furthermore, Schmidt has failed to present sufficient evidence in the

record to create a genuine issue of material fact that R. Lavin's proffered reasons for Schmidt's discharge are a pretext for age discrimination. Since Schmidt has failed to establish a prima facie case of discrimination under the ADEA, summary judgment in favor of R. Lavin is necessary as a matter of law.

A.  Prima Facie Case:  Substantially Younger and Similarly Situated

R. Lavin does not dispute that Schmidt has established the first three elements of his prima facie case of discrimination under the ADEA. At the time when Schmidt was terminated from R. Lavin, Schmidt was 75 years old and meeting R. Lavin's legitimate performance expectations. Only the fourth element remain at issue. In order to properly determine what level evidence Schmidt must produce in order to create a genuine issue of material fact as to the fourth element of his prima facie case, this court must first determine whether Schmidt was terminated as a single employee or as a part of a true RIF. See Bellaver v. Quanex Corp., 200 F.3d 485, 494 (7th Cir. 2000).

A plaintiff, in a single-discharge case, does not need to make a showing that similarly situated employees were treated better because an inference of discrimination arises from the fact that the plaintiff was constructively "replaced" by workers outside of the protected class. Bellaver, 200 F.3d at 495. The facts in a "single-discharge" case or a "mini-RIF", unlike a true RIF, reveal that only a single employee was fired and that the single employee's job was not eliminated, instead, the fired employee's duties were absorbed by other younger employees. The net result being that the fired employee was effectively "replaced" by younger employees. See e.g., Wichmann v. Board of Trustees of Southern Ill. Univ., 180 F.3d 791, 803 (7th Cir.1999)(affirming a jury finding of discrimination for a 48-year-old employee who was fired when the position of "associate director" was eliminated but where plaintiff's duties were absorbed mostly by younger workers who retained

8

their jobs during a departmental restructuring and in many cases received raises). But see, e.g., Gadsby v. Norwalk Furniture Corp., 71 F.3d 1324, 1331-32 (7th Cir.1995)(holding that plaintiff's position was neither replaced nor absorbed and there could be no inference of discrimination from evidence that younger employees were treated more favorably because it did not appear that the employer selected the plaintiff for termination based on age from a group of employees who were equally qualified). The law does not allow employers to avoid liability by terming a decision to fire a single employee a "RIF." Bellaver, 200 F.3d at 494.

A true RIF, on the other hand, is when an employer decides to eliminate certain positions from its workforce and typically involves laying off many employees at once. Id. The facts in a true RIF reveal a pattern of reductions by the employer in an attempt to meet particuar fiscal and productivity goals. In the context of a true RIF, a plaintiff must establish that younger, similarly situated employees were treated better by the employer.

In this case, the undisputed evidence establishes that in January, 1999, R. Lavin had been experiencing financial difficulties and that J. Lavin decided to reduce the number of Field Metallurgists from two to one as a part of a company-wide strategy to return to profitability. Despite this evidence, however, Schmidt argues that since he was the only employee terminated in July, 1999, this case should be analyzed as "single-discharge" case. Similar to the plaintiff in Wichmann, Schmidt's responsibilities as Field Metallurgist were absorbed by a younger Callaghan once Schmidt was terminated. Furthermore, Schmidt was the only employee terminated in July, 1999, similar to the plaintiff in Bellaver where the United States Court of Appeals for the Seventh Circuit held that the plaintiff's case of discrimination there should have been analyzed by the district court under a single discharge framework. Id. The undisputed evidence in this case, however, establishes that

9

pursuant to a company-wide RIF a total of three R. Lavin employees were terminated in 1999, and eighteen R. Lavin employees where terminated in 2000. Accordingly, upon full consideration of Bellaver, Wichmann, Gadsby, and the undisputed facts of this case, this court finds that this case is one involving a true RIF. Therefore Schmidt must show that he was discharged while other similarly situated employees, who were not members of Schmidt's protected class, were treated more favorably.

Schmidt argues that Callaghan is a similarly situated employee not a member of Schmidt's protected class treated more favorably by R. Lavin. It is undisputed that Callaghan is not a member of Schmidt's protected class. At the time Schmidt's termination, Callaghan was 24 years younger than Schmidt. See Hartley v. Wisconsin Bell, Inc., 124 F.3d 887, 892-893 (7th Cir.1997)(holding that a 10 year difference in ages between the plaintiff and her replacement is presumptively "substantial"). Additionally, since Callaghan was retained as the sole Field Metallurgist and Schmidt, the only other Field Metallurgist, was terminated Schmidt establishes that R. Lavin treated Callaghan more favorably than Schmidt. Schmidt, nonetheless, has failed to establish the fourth element of his prima facie case because Schmidt fails to present evidence in the record to establish an issue of fact that Callaghan was similarly situated to Schmidt.

The qualification "similarly situated" is an important element of the prima facie case. See Wallace v. SMC Pneumatics, Inc., 103 F.3d 1394, 1398 (7th Cir. 1997). The mere fact that a younger employee is retained in a RIF while an older employee is discharged is not enough to create an inference of age discrimination. Id. With that in mind, the undisputed evidence in this case establishes that although both Callaghan and Schmidt possessed the necessary technical skill for the Field Metallurgist position, the two metallurgists were not similarly situated because J. Lavin

10

believed that Callaghan had better customer service skills and had a better ability to function as part of a team in comparison to Schmidt. In response, Schmidt fails to present evidence in the record such that a reasonable jury could find that both he and Callaghan had the same customer service skills and ability to function as a part of a team, or that Schmidt actually possessed better teaming and customer service skills in comparison to Callaghan.

The undisputed evidence in the record reveals that Schmidt had several customer complaints made against him where Callaghan had none. In addition, the undisputed evidence establishes that J. Lavin was concerned about Schmidt's ability to function as a part of a team. The record in this case does not establish that J. Lavin had similar concerns about Callaghan's ability to function as part of a team. In response, Schmidt only produces his own affidavit which establishes that Schmidt believed his customer service and teaming skills to be "very good." Schmidt's self-serving affidavit fails to establish an issue of material fact and fails to put into dispute R. Lavin's evidence of customer and employee complaints. Accordingly, Schmidt has failed to establish the fourth element necessary to establish a prima facie case under the ADEA.

B.   Prima Facie Case:  Pretext

Even assuming *arguendo* that Schmidt could establish a prima facie case of age discrimination, summary judgment in favor of R. Lavin is still necessary as a matter of law because Schmidt has failed to establish an issue of fact that R. Lavin's proffered reasons for his discharge are a pretext for discrimination.

A plaintiff can prove pretext in one of two ways: (1) by showing that a discriminatory reason more likely than not motivated the employer (i.e., that the employer's proffered reason was not the sole determining factor and, therefore, age discrimination might have been a determining factor in

11

addition to the proffered reason); or (2) by showing that the employer's proffered explanation is unworthy of credence. See Perez v. Colwell Systems, Div. of Deluxe Corp., 83 F.Supp.2d 976, 984 (1999). Because some employees are inevitably discharged in a RIF, a fired employee in a RIF context will succeed in establishing pretext when he provides evidence that would support at least an inference that regardless of the reasons stated by the employer, he would not have been terminated "but for" discriminatory reasons. Id.

It is R. Lavin's position that Schmidt was terminated because in comparison to Callaghan, J. Lavin believed that Callaghan had better customer service and teaming skills. In response, Schmidt fails to establish a genuine issue of material fact that R. Lavin's stated reason for Schmidt's termination is a pretext for discrimination. As discussed above, Schmidt presents no evidence in the record to establish an issue of fact that Schmidt had superior or similar customer service and teaming skills in comparison to Callaghan or to otherwise call into question J. Lavin's stated beliefs as to the skill level of either employee. Instead, Schmidt argues first that R. Lavin's reasons for his discharge are a recent fabrication because R. Lavin has had several opportunities to articulate nondiscriminatory reasons why Schmidt was terminated previous to this litigation but failed to articulate those reasons on each occasion and because R. Lavin has failed to produce any documentation explaining its basis for Schmidt's termination. Second, Schmidt argues that a discriminatory reason more likely than not motivated R. Lavin to terminate him because R. Lavin's motives in hiring Callaghan in the first place was so that Schmidt could retire, and because if there were any customer complaints at all those complaints had no bearing on R. Lavin's decision making. Third, Schmidt argues that R. Lavin's justifications are unworthy of credence because Schmidt's experience and knowledge is far superior to Callaghan's, because Schmidt believed his customer

12

service skills to be very good, because generally Field Metallurgists do not work as part of a team, and because Schmidt believes that there were no customer complaints against him at all. All three of Schmidt's arguments to establish pretext are without merit and this court will address each argument in turn.

In attempting to establish pretext, an employee discharged in a RIF does not need to produce evidence tending to prove that the employer's explanation was a "lie" in the sense of being a complete fabrication; instead, he must establish that age tipped the balance in favor of discharge. Perez, 83 F.Supp.2d at 984. Schmidt, in his first argument however, attempts to establish that R. Lavin's proffered reason is in fact a "lie." In response to Schmidt's argument of lack of documentation, the record in this case provides three affidavits of R. Lavin customers that all state that they do not want Schmidt to service their facility. In addition, R. Lavin has submitted the deposition testimony and/or the affidavits of nine current and former R. Lavin employees or officers that state that Schmidt lack teaming skills. Schmidt has failed to adequately dispute any of this evidence in the record. Furthermore, Schmidt admits in the record that R. Lavin traditionally did not keep formal personnel files. Obviously an employer is not insulated from discrimination by failing to keep personnel records, but in this case Schmidt fails to establish how R. Lavin's tradition of lack of record keeping now establishes pretext for discrimination.

Turning to Schmidt's argument that R. Lavin has had several opportunities previous to this litigation to state their nondiscriminatory reasons for his discharge but failed to do so, Schmidt has failed to establish that R. Lavin ever changed its nondiscriminatory reason for his discharge at any point before or during this litigation. In addition, Schmidt has failed to establish that he ever asked R. Lavin directly why he was discharge before this litigation.

13

The first opportunity that Schmidt identifies as a time when R. Lavin should have offered their reasons for his discharge was at the lunch in which J. Lavin terminated Schmidt. At that lunch, Schmidt argues that he specifically inquired as to whether R. Lavin's business was bad and that J. Lavin sidestepped the question and failed to give Schmidt a reason for discharging him. In support of this argument Schmidt cites to <u>Wilson v. AM General Corp</u>, 167 F.3d 1114, 1121 (7th Cir. 1999) for the proposition that the failure to identify a nondiscriminatory basis for discharge before litigation is evidence of pretext. <u>Wilson</u>, however, stands for the proposition that at trial there was sufficient evidence for a jury to find pretext where the evidence included a plaintiff's testimony of pretext, the nonexistence of files regarding plaintiff's employment record, and an employer's failure to disclose the reasons for discharge at an exit interview, in spite of a plaintiff's direct query. <u>Wilson</u>, 167 F.3d at 1121.

This case is factual different for the <u>Wilson</u> case because the plaintiff in <u>Wilson</u> asked directly at his exit interview why he was being discharged. In this case, Schmidt admits that he never asked J. Lavin at that lunch why he was being discharged. Talking all reasonable inferences in favor of Schmidt, Schmidt fails to establish a genuine issue of material fact as why how J. Lavin's failure to answer Schmidt's question about R. Lavin's business constitutes a failure by R. Lavin to disclose legitimate, nondiscriminatory reasons for Schmidt's discharge.

The second opportunity identified by Schmidt occurred on August 16, 1999, when attorney's for R. Lavin's responded to a request for the name and age of the person who assumed Schmidt's duties after Schmidt was terminated made by counsel for Schmidt. In a letter responding to that request, counsel for R. Lavin volunteered that Schmidt's job had been "eliminated for business purposes." Schmidt asserts that R. Lavin should have disclosed their nondiscriminatory reasons for

14

Schmidt's discharge at this time and argues that counsel for R. Lavin should have known at the time

of the request that Schmidt was concerned that he had suffered age discrimination. To substantiate

this argument, Schmidt cites Emmel v. Coca-Cola Bottling Co., 95 F.3d 627, 634 (7th Cir. 1996)

for the proposition that a failure by an employer to express a nondiscriminatory reason for an

employee's discharge despite several opportunities to do so gives rise to an inference that a later

expressed reason is fabricated. In Emmel, the plaintiff asked the defendant directly why she was not

promoted and the defendant offered one response. Id. Then in response to an interrogatory, the

defendant answered the same question differently. Id. Finally, at trial the defendant offered still a

third reason for the plaintiff's non-promotion. 95 F.3d at 635.

Accepting Schmidt's facts as true, Schmidt admits that counsel acting on his behalf never

asked R. Lavin directly its reasons for terminating Schmidt. Moreover, Schmidt admits in the record

that R. Lavin's volunteered response presumably referred to R. Lavin's attempt to return to

prosperity by reducing from two Field Metallurgists to one. Based on these admissions, Schmidt

fails to establish how the volunteered answer of "business purposes" is factually inconsistent with

R. Lavin's proffered reasons that Schmidt lacked customer service and teaming skills. Finally, since

this lawsuit was not initiated until February 9, 2000, Schmidt also has failed to establish how on

August, 16, 1999, R. Lavin had any duty to volunteer its nondiscriminatory reasons for his

termination.

Schmidt identifies R. Lavin's third opportunity as J. Lavin's deposition and R. Lavin's final

opportunity as this motion for summary judgment. Schmidt argues that J. Lavin stated in his

deposition that the sole basis for his decision to discharge Schmidt instead of Callaghan was that

Callaghan was more universally accepted by the R. Lavin's customers. Schmidt argues that this

reason given in J. Lavin's deposition is factually inconsistent with R. Lavin's reason stated in this motion for summary judgment that Schmidt was discharged because Schmidt lacked customer service as well as teaming skills. Schmidt concludes that this slight change in story is evidence of pretext and entitles him to a trial on the reason for his termination and cites Stalter v. Wal-Mart Stores, Inc., 195 F.3d 285, 291 (7th Cir. 1999) in support.

In Stalter, evidence that the defendant changed its story as to why they discharged the plaintiff between the time of the state administrative proceedings and the federal lawsuit was persuasive evidence of pretext and entitled the plaintiff to a trial. Id. In this case, however, Schmidt does not produce any evidence in the record to substantiate his argument of a changed story. Schmidt, instead, selectively cites to J. Lavin's deposition in attempt to distort the facts of this case. J. Lavin never stated in his deposition that the sole basis for he decision to retain Callaghan over Schmidt was that Callaghan was more universally accepted by R. Lavin's customers. Looking at J. Lavin's deposition as a whole, J. Lavin admits to considering the opinion of his sales team as well as considering customer complaints in making his decision. See J. Lavin Dep at 157-70. In this case, the undisputed evidence in the record establishes conclusively that Schmidt was discharged because he lacked customer service and teaming skills in comparison to Callaghan. Accordingly, Schmidt has failed to establish that between the time of J. Lavin's deposition and this motion for summary judgment that R. Lavin's nondiscriminatory reasons for Schmidt's discharge have changed.

Addressing Schmidt's second argument that age was the motivating factor driving his termination, in support of this argument Schmidt cites only to his own affidavit. Schmidt's affidavit, however, fails to adequately respond to the undisputed evidence in the record which is replete with

16

evidence that R. Lavin did not consider Schmidt's retirement or his age in determining to terminate him. J. Lavin testified in his deposition as follows:

> Q: Did you give any thought [in trying to decide who to retain between Callaghan and Schmidt] to whether Mr. Schmidt would be retiring in the future?
> A: No.
> Q: Why not?
> A: Don is very healthy, very vibrant. Well healthwise is speculation. He appeared to be very healthy and appears to be strong and active.
> Q: How old was he at that time?
> A: I'm not really sure. He was in his early 70s.

See J. Lavin Dep. at 133. Furthermore, the record does not establish in any way that Callaghan was hired to eventually force Schmidt into retirement. In looking at Schmidt's deposition, Schmidt testified that "it was pretty obvious" that R. Lavin wanted someone to follow him in succession when they hired Callaghan. See Schmidt Dep. at 109. Schmidt was unable, however, to articulate how it was "pretty obvious" when asked in his deposition. In addition, Schmidt admits in the record that no one at R. Lavin told him that R. Lavin wanted Schmidt to retire when they hired Callaghan. See Schmidt Dep. at 109, 123, 185-6. Considering the undisputed evidence in the record, there is no evidence in the record to create an issue of fact that R. Lavin considered Schmidt's age or retirement in deciding to retain Callaghan over Schmidt.

Addressing now Schmidt's argument that customer complaints against him did not weigh in on J. Lavin's decision to terminate him, the record establishes that there were several customer complaints made against Schmidt, that J. Lavin was personally aware of those customer complaints at the time he made his decision to terminate Schmidt, and that J. Lavin considered those complaints when he decided to terminate Schmidt. Schmidt can only speculate in his own affidavit as to the decision making process of J. Lavin and can point to no evidence in the record to establish a genuine

17

issue of material fact that J. Lavin did not consider customer complaints made against Schmidt when he decided to retain Callaghan over Schmidt.

In addressing Schmidt's third argument that R. Lavin's proffered reasons are unworthy of credence, to demonstrate that an employer's ostensible justification is unworthy of credence, an employee must present evidence tending to prove that the employer's proffered reasons are factually baseless, did not actually motivate the discharge in question, or are insufficient to motivate the discharge. Perez, 83 F.Supp.2d at 984. In this case, Schmidt offers his conclusions that his experience and knowledge were far superior to Callaghan's, that he believed his customer service skills to be very good, that generally Field Metallurgists do not work as part of a team and that there were no customer complaints again him to establish that R. Lavn's profffered reason is unworthy of credence. These conclusions, however, are insufficient as a matter of law to create an issue of material fact that R. Lavin's proffered reason is unworthy of credence.

It is undisputed in this case that Schmidt's experience and knowledge were far superior to Callaghan's. This undisputed evidence, however, is immaterial because Callaghan was not retained over Schmidt based on experience or knowledge. Callaghan was retained over Schmidt because Callaghan had better customer service and teaming skills in comparison to Schmidt. Schmidt establishes that if evaluated under different criteria he would have been retained over Callaghan, however, the question before this court is whether the criteria actually used by J. Lavin to retain Callaghan is forbidden or without merit. As to this question, Schmidt does not present any evidence in the record to establish a genuine issue of material fact that the criteria used by J. Lavin in evaluating Schmidt and Callaghan is forbidden or without merit.

Similarly, Schmidt's conclusion that he believed that there were no customer complaints is

18

without merit and does not create an issue for trial for reasons explained fully earlier in this opinion. Finally, Schmidt's conclusion that generally Field Metallurgists do not work as part of a team is immaterial to this analysis because Schmidt's conclusion does not refute the undisputed evidence that at times previous to the RIF Field Metallurgists did work as a part of team and that as a part of R. Lavin's strategy going foward Field Metallurgists would be asked to work more as a part of a team.

In summary, in light of the legitimate nondiscriminatory reasons offered by R. Lavin as to why Schmidt was terminated, Schmidt has failed to produced sufficient evidence in the record to establish an issue of fact that these reasons are a pretext for discrmination.

## CONCLUSION

For the above stated reasons, R. Lavin's motion for summary judgment is GRANTED. This case is dismissed with prejudice in its entirety. All pending motions are moot.

ENTER:

JAMES F. HOLDERMAN
United States District Judge

DATE: March 21, 2001